IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

KANDI LAUFERT, Individually
and as Personal Representative
for the ESTATE OF NICHOLE
ASHLEY LAUFERT, Deceased.

       Plaintiff

Vs.                                                      Civil Action No. 2:22-cv-00029
                                                _____

DAVIS LOGISTICS, LLC,
STEPHAN ROGIAN,
RYDER TRUCK RENTAL, INC,
d/b/a RYDER TRUCK,
AWF EXPRESS, LLC,
AMERICAN WOOD FIBERS, INC.
MARTIN NEITCH,
TRANS GLOBAL PROJECTS GROUP,
TGP LOGISTICS, LLC,
PORTSMOUTH MARINE TERMINALS,
NORFOLK INTERNATIONAL TERMINALS,
NEWPORT NEWS MARINE TERMINALS,
VIRGINIA INLAND PORT,
RICHMOND MARINE TERMINALS
VIRGINIA INTERNATIONAL TERMINALS, LLC,
VIRGINIA INTERNATIONAL GATEWAY,
ALINDA CAPITAL PARTNERS,
UNIVERSITIES SUPERANNUATION SCHEME, LTD,
AND VIRGINIA PORT AUTHORITY

       Defendants.

## **COMPLAINT**

AND NOW, comes the Plaintiff, KANDI LAUFERT, Individually, and as the

Personal Representative of the Estate of Nichole Ashley Laufert, by and through her

undersigned counsel, James G. Bordas, III, Esq., Christopher J. McCabe, Esq., and

the Law Firm of Bordas and Bordas, PLLC, and Brooks West, Esq, David A. Dobson,

and the West Law Firm, LC, who for her Complaint against the Defendants, Davis

Logistics, LLC, Stephan Rogian, Ryder Truck Rental, Inc., AWF Express, LLC, American Wood Fibers, Inc., Martin Neitch, Trans Global Projects Group, TGP Logistics, Portsmouth Marine Terminals, Norfolk International Terminals, Newport News Marine Terminals, Virginia Inland Port, Richmond Marine Terminals, Virginia International Terminals, LLC, Virginia International Gateway, Alinda Capital Partners, Universities Superannuation Scheme LTD  and Virginia Port Authority, states as follows:

1.      Plaintiff, Kandi Laufert ("Plaintiff Laufert") at all times material and relevant hereto, was the biological mother to decedent, Nichole Ashley Laufert, and currently resides in Westminster, Carroll County, Maryland.

2.      On April 30, 2020, Nichole Ashley Laufert (hereinafter "Plaintiff Decedent") was tragically killed due to the catastrophic injuries she sustained in a rear end, preventable crash that occurred at and/or near Interstate 77 (hereinafter "I-77") in Scarbro, Fayette County, West Virginia.

3.      Plaintiff Decedent was 26-years when she died.

4.      On June 10, 2020, Plaintiff Laufert was appointed as the Personal Representative of the Estate of Nichole Ashley Laufert in the Carroll County Circuit Court, Maryland.

5.      Plaintiff Laufert now commences this lawsuit on behalf of the Estate of Nichole Ashley Laufert, as it concerns all injuries, harms, losses and damages Plaintiff Decedent experienced on April 30, 2020 before she died, and also on behalf of all of Plaintiff Decedent's wrongful death statutory beneficiaries for all injuries, harms, losses and damages each of them have suffered, and are reasonably certain

to continue to suffer, as a result of her wrongful death, including each of the harms, losses, injuries and damages contemplated by the West Virginia Wrongful Death Act, §55-7-5 and §55-7-6.

6.      Defendant, Davis Logistics, LLC (hereinafter "Defendant Davis Logistics") at all times material and relevant hereto, was a corporation organized and existing under the laws of the State of Arkansas, with its registered and/or principle place of business located at 4370 Columbia Road, 34, Magnolia, Arkansas 71753.

7.      Defendant, Stephan Rogian (hereinafter "Defendant Rogian") at all times material and relevant hereto, was an adult individual residing at 1128 Nevada 8, Waldo, Arkansas 71770.

8.      Defendant, Ryder Truck Rental, Inc. d/b/a RYDER TRUCK (hereinafter "Defendant Ryder") at all times material and relevant hereto, was a corporation organized and existing under the laws of the State of Florida, with a principle business location and/or registered office located at 11690 NW 105 Street, Miami, Florida 33178.

9.      AWF Express, LLC (hereinafter "Defendant AWF") at all times material and relevant hereto, was a corporation organized and existing under the laws of the State of Wisconsin, with a principle place of business at 9740 Patuxent Woods Drive, Suite 500, Columbia, Maryland 21046-2297 and a registered office located at 100 Alderson Street, Schofield, Wisconsin 54476.

10.   American Wood Fibers, Inc. (hereinafter "Defendant American") at all times material and relevant hereto, was a corporation organized and existing under the laws of the State of Wisconsin, with a principle place of business at 9740 Patuxent Woods Drive, Suite 500, Columbia Maryland 21046, and a registered office located at 1901 S. Whitney Way, Madison, Wisconsin 53711.

11.   Defendant, Martin Neitch ("Defendant Neitch") at all times material and relevant hereto, was an adult individual residing at 2239 Redstone Road, Marion, Virginia 24354.

12.   Defendant Trans Global Projects Group (hereinafter "Defendant TGP") at all times material and relevant hereto, was a corporation and/or business organized and existing under the laws of the State of Texas, with a principle place of business and/or registered office located at 1800 South Main Street, Suite 608, McAllen, Texas 78503-5443.

13.   Defendant, TGP Logistics, Inc. (hereinafter "Defendant TGP Logistics") at all times material and relevant hereto, was a corporation organized and existing under laws of the State of Texas, with a principle place of business located at 4646 FM, 1960 West, Suite 381, Houston, Texas 77069.

14.   Defendant, Portsmouth Marine Terminal (hereinafter "Defendant Portsmouth") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 2000 Seaboard Avenue, Portsmouth, Virginia 23707.

15.     Defendant, Norfolk International Terminals (hereinafter "Defendant Norfolk") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 7737 Hampton Boulevard, Norfolk, Virginia 23505.

16.     Defendant, Newport News Marine Terminals (hereinafter "Defendant Newport") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at Warwick Boulevard and 25th Street, Newport News, Virginia 23607.

17.     Defendant, Virginia Inland Port (hereinafter "Defendant Inland") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 7685 Winchester Road, Front Royal, Virginia 22630.

18.     Defendant, Richmond Marine Terminals (hereinafter "Defendant Richmond") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 5000 Deepwater Terminal Road, Richmond, Virginia 23234.

19.     Defendant, Virginia International Terminals, LLC (hereinafter "Defendant Terminals") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws

of the State of Virginia, with a principle place of business located at 7737 Hampton Boulevard, Norfolk, Virginia 23505.

20.     Defendant, Virginia International Gateway (hereinafter "Defendant Gateway") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 1000 Virginia International Gateway Boulevard, Portsmouth, Virginia 23703.

21.     Defendant, Alinda Capital Partners (hereinafter "Defendant Alinda") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Connecticut, with a principle place of business located at 100 West Putnam Avenue, Greenwich, Connecticut 06830.

22.     Defendant, Universities Superannuation Scheme Ltd. (hereinafter "Defendant Universities") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision with a principle place of business located at Royal Liver Building Pier Had Liverpool, L3 1 PY United Kingdom.

23.     Defendant, Virginia Port Authority (hereinafter "Defendant Port Authority") at all times material and relevant hereto, was a corporation, business, partnership, agency and/or political subdivision existing under the laws of the State of Virginia, with a principle place of business located at 600 World Trade Center, Norfolk, Virginia 23510.

24.     Defendants Davis, Ryder, AWF, American, TGP and TGP Logistics at all times material and relevant hereto, acted by and through their actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants, and conducted business throughout the State of West Virginia, including, but not limited to, Fayette County.

25.     Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority at all times material and relevant hereto acted by and through their actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants, and conducted business in loading and securing cargo onto various transportation mechanisms, which included trucks and trailers.

26.     It is believed, and therefore averred that Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority, in addition to acting in their individual capacity, were at all times material and relevant hereto, functions of, part of, partners with, co-owned by, co-owners with, controlled by, a subsidiary of, run by, managed by, directed by and/or operated by one another.

27.     At all times material and relevant hereto, cargo through the Port of Virginia was moved by way of six (6) terminals: Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond.

28.     Defendant Port Authority at all times material and relevant hereto was an autonomous agency (political subdivision) of the Commonwealth of Virginia that owned and controlled the Port of Virginia, a group of facilities with their activity

centered on the harbor of Hampton Road, Virginia, which included, but was not limited to Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond.

29.   The Port of Virginia at all times material and relevant hereto moved cargo through facilities, including Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond, carrying the goods and supplies that manufactures, corporations and individuals consumers use in their everyday lives.

30.   It is believed and therefore averred that at all times material and relevant hereto, Defendant Port Authority owned and controlled the Port of Virginia and all of its facilities/terminals which included, but was not limited to Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond.

31.   It is believed and therefore averred that at all times material and relevant hereto, Defendant Port Authority had lease agreements with Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond.

32.   It is believed and therefore averred that at all times material and relevant hereto, Defendant Terminal was Defendant Port Authority's non-stock, non-profit affiliate that operated, controlled and/or oversaw the Port of Virginia, including, but was not limited to Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and Richmond.

33.   It is believed and therefore averred that Defendants Alinda and Universities purchased various terminals owned, leased to, controlled and/or managed by Defendants Port Authority and Terminals, which include, but are not limited to, Defendants Norfolk, Gateway, Portsmouth, Newport, Inland and

Richmond.

34.     Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority at all times material and relevant hereto, acted by and through their actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants, and were responsible for loading, securing, attaching and providing a load to Defendant Rogian which at some point became unsecure, shifted and caused his trailer to become detached from his truck and come to rest on the travel lanes of I-77.

35.     Defendant Rogian at all times material and relevant hereto, was an actual, apparent, entrusted, authorized and/or ostensible agent, employee, contractor, representative, permissive operator and/or servant of Defendants Davis, TGP and TGP Logistics, as described more fully throughout this Complaint.

36.     Defendant Neitch at all times material and relevant hereto, was an actual, apparent, entrusted, authorized and/or ostensible agent, employee, contractor, representative, permissive operator and/or servant of Defendants Ryder, AWF and American, as described more fully throughout this Complaint.

37.     Defendant Davis at all times material and relevant hereto, was an Interstate Motor Carrier as defined by the Federal Motor Carrier Safety Regulations ("FMCSR"), and was required to comply with all applicable provisions/regulations provided for by the Federal Motor Carrier Safety Administration ("FMCSA") and the FMCSR.

38.    Defendant TGP at all times material and relevant hereto, was a project logistics management company that held itself out as "one of the world's leading providers of project logistics management."

39.    Defendant TGP at all times material and relevant hereto, marketed to customers that it was "committed to providing world class logistics support for major projects from beginning to end."

40.    Defendant TGP at all times material and relevant hereto, advertised to customers that "we'll pull strings, push the buttons and leverage our global connections to make sure your project and its components won't just get delivered. They'll be delivered on time and to your complete satisfaction."

41.    Defendant TGP at all times material and relevant hereto, advertised that it provided in depth risk analysis and assistance to all customers to find the most comprehensive coverage for cargo delivery no matter the mode of transport or the route.  It also provided assurances that "you can feel confident your cargo is protected every step of the way."

42.    Defendant TGP at all times material and relevant hereto, provided project logistics management services and promised to customers it would provide "world-class project management support from beginning to end."

43.    Defendant TGP Logistics at all times material and relevant hereto, was part of the Freight Transportation Arrangement Industry and provided customers with project logistics management services, broker services and/or logistic support services.

44.    Defendants TGP and TGP Logistics at all times material and relevant hereto, would hire, contract with and/or utilize transportation services being provided by companies, including, but not limited to Defendant Davis, to transport cargo/materials/project in direct furtherance of Defendants TGP and TGP Logistics specific business operations, which includes, but is not limited to shippers, brokers, project logistics management company, logistics support, consultants and/or contractors.

45.    It is believed and therefore averred that at all times relevant hereto, Defendants TGP and TGP Logistics were registered brokers, shippers, a project logistic management company, a provided logistics support business and/or a businesses making arrangements for third-party companies, including, but not limited to Defendant Davis, to ship, haul and transport cargo/products/material to various locations for customers and in direct furtherance of Defendants TGP and TGP Logistics specific business operations.

46.    Defendants TGP and TGP Logistics at all times material and relevant hereto, were required to comply with all applicable provisions/regulations provided for by the FMCSA and the FMCSR concerning the specific relationship Defendants TGP and TGP Logistics formed with businesses, including, but not limited to Defendant Davis, as described more fully throughout the Complaint.

47.    Defendants TGP and TGP Logistics at all times material hereto, were responsible to arrange the shipment cargo/materials/product for a customer from the State of Virginia to Green Bay, Wisconsin, which would be used for the construction of a paper mill/factory.

48.     It is believed and therefore averred that Defendants TGP and TGP Logistics were providing a customer with project logistics management services, project management support, broker services and logistic support services.

49.     It is believed and therefore averred that Defendants TGP and TGP Logistics at all times material hereto, entered into a contract, agreement and/or a verbal understanding with Defendant Davis, that the commercial carrier at the request and direction of Defendants TGP and TGP Logistics would transport cargo/materials/product to Green Bay, Wisconsin for the construction of a paper factory.

50.     In the alternative, it is believed and therefore averred that Defendants TGP and TGP Logistics brokered a contract between Defendants TGP, TGP Logistics, Davis and other unnamed parties, whereby Defendant Davis at the request and direction of Defendants TGP and TGP Logistics would transport cargo/materials/product to Green Bay, Wisconsin for the construction of a paper factory.

51.     Defendants TGP and TGP Logistics at all times material and relevant hereto, was specifically engaged in the business of providing services and goods:

    a.  loading/shipping/transporting cargo Interstate;

    b.  Retaining businesses and/or commercial carriers to transport cargo Interstate;

    c.  Hiring businesses and/or commercial carriers to ship goods Interstate;

    d.  Retaining brokers, who in turn would locate, communicate with and hire businesses and/or commercial carriers to ship goods;

    e.  Advertising, promoting, distributing, selling and/or otherwise placing into the stream of the commerce cargo related to be in a professional shipper

of goods, project logistics management services, broker services, logistic support services and/or use of commercial carriers to transport such goods.

52.     Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, were businesses that continuously employed, worked with and/or associated with each other related to all aspects of project logistics management services, logistic support services and loading, shipping and transporting cargo/products/materials by commercial motor vehicle carriers and/or business.

53.     Defendants TGP and TGP Logistics at all times material and relevant hereto, hired, contracted with and/or utilized Defendant Davis to load, ship and transport pieces of cargo in direct furtherance of Defendants TGP and TGP Logistics specific business operation as outlined throughout this Complaint.

54.     Defendant Rogian at all times material and relevant hereto, was the permissive operator of a motor vehicle that displayed Defendant Davis' business placard and federally issued USDOT and MC numbers.

55.     Defendant Rogian at all times material and relevant hereto, operated a vehicle that was owned by, registered to and acting under the direct control, direction, authority and supervision of Defendants Davis, TGP and TGP Logistics.

56.     Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, had possession and control over the conduct, actions, inactions, omissions and behavior of Defendant Rogian, while he possessed and operated the vehicle which eventually became involved in this crash.

57.    Defendant Neitch at all times material and relevant hereto, was the permissive operator of a commercial motor vehicle that displayed the business placard of and federally issued USDOT and MC Numbers of Defendants Ryder, AWF and American.

58.    Defendant Neitch at all times material and relevant hereto, operated a commercial motor vehicle owned by, registered to and under the direct control, direction, authority and supervision of Defendants Ryder, AWF and American.

59.    Defendants Ryder, AWF and American at all times material and relevant hereto, had possession of, and control over Defendant Neitch's conduct, inactions, omissions and behavior while he operated and was in possession of the commercial motor vehicle that became involved in this crash.

60.    Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority at all times material and relevant hereto, performed separate functions and/or committed separated acts and/or omissions as set forth throughout this Complaint, so as to independently and/or individually cause the catastrophic injuries and damages to Plaintiff Laufert and Plaintiff Decedent, as set forth more fully throughout this Complaint.

61.    It is believed and therefore averred that at all relevant times hereto, Defendants TGP and TGP Logistics extended an invitation and/or offer for Defendant Davis to enter into an agreement, contract and/or understanding whereby the business/commercial carrier would load/transport/deliver cargo in direct furtherance of Defendants TGP and TGP Logistics specific business

operations, which includes, but is not limited to, shippers, brokers, project logistics management, logistics support, consultants and/or contractors.

62.     In the alternative, at all relevant and material times hereto, Defendants TGP and TGP Logistics extended an invitation and/or offer for Defendant Davis to enter into an agreement, contract and/or understanding to serve as a transportation provider for and/or on behalf of Defendants TGP and TGP Logistics, requiring Defendant Davis to load/transport/deliver cargo in direct furtherance of specific business operations, which includes, but is not limited to, shippers, brokers, project logistics management, logistics support, consultants and/or contractors.

63.     It is believed and therefore averred that Defendant Davis at all relevant and material times hereto, signed and/or accepted the terms of Defendants TGP and TGP Logistics agreement, contract and/or understanding prior to the collision date.

64.     It is believed and therefore averred that Defendant Davis at all times material and relevant hereto, was directed by Defendants TGP and TGP Logistics per the parties agreement, contract and/or understanding to pick-up, load, transport and deliver two large pieces of cargo that were to be delivered to Green Bay, Wisconsin. Defendants TGP and TGP Logistics provided specific terms/requirements that included, but were not limited to:

a. Transportation of pieces of cargo Interstate;

b. The specific routes to be traveled in picking up and delivering loads;

c. Project Logistics;

d. Time frames/deadlines in picking up and delivering loads;

e. Mileage/trip charges;

f. Logistic Support;

g. Controlling the manner of delivery;

h. Motor vehicle report service;

i. Telematics services;

j. Safety in compliance training and consultation;

k. Driver training; and

l. Insurance requirement.

65. The terms of such contract, agreement and/or relationship established not only Defendants TGP and TGP Logistics ability to, but their absolute right to control the conduct/action of Defendant Davis, along with any permissive operator utilizing Defendant Davis' equipment, including, but not limited to Defendant Rogian, whenever loading/transporting/delivering cargo at the request and direction of Defendants TGP and TGP Logistics.

66. Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, by and through their actual, apparent, authorized and/or ostensible agents, employees and/or servants:

a. Controlled the operation of Defendant Rogian's vehicle;

b. Controlled the actions and/or omissions of Defendant Rogian while he was loading and transporting cargo at the request/direction of Defendants TGP and TGP Logistics;

c. Controlled the time frame when cargo was to be picked up and delivered on behalf of and/or at the direction of Defendants TGP and TGP Logistics;

d. Controlled the direction in which those transporting cargo at the direction

of and/or on behalf of Defendants TGP and TGP Logistics should travel, including Defendant Rogian;

e.  Directed and/or instructed those transporting cargo on behalf of and/or at the direction of Defendants TGP and TGP Logistics as it concerns the specific loads being delivered, including Defendant Rogian;

f.  Directed and controlled the operation of the truck trailer which Defendant Rogian operated while it had an unsecure load that was shifting/moving which ultimately resulted in the gooseneck trailer becoming unattached from the truck and led to the catastrophic events given rise to this litigation;

g.  Full responsibility for the vehicle that was being operated by Defendant Rogian in fact in law;

h.  Performed and/or failed to act pertaining to all necessary maintenance of the subject vehicle which lost its load; and/or

i.  Allowing the load in question to be hauled by inadequate, improper and/or insufficient equipment when they knew, or should have known, that said vehicle and trailer did not have the ability or capacity to safely transport the load.

67.   Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, acted by and through actual, apparent, authorized and/or ostensible agents, employees, and/or servants including, but not limited to, Defendant Rogian who were acting;

a.  Within the scope of their relationship, contract, agency and/or employment with the Defendants Davis, TGP and TGP Logistics;

b.  In furtherance of the Defendants Davis, TGP and TGP Logistics business and under the natural, apparent, authorized and/or ostensible authority, control and/or right of control of Defendants Davis, TGP and TGP Logistics; and/or

c.  In service of the Defendants Davis, TGP and TGP Logistics.

68. Defendant Rogian at all times material and relevant hereto:

    a. Committed acts and/or omissions of a kind in nature for which he was retained and/or employed to perform by Defendants Davis, TGP and TGP Logistics;

    b. Acted and/or failed to act within the authorized time and special limits, set or established for him by Defendants Davis TGP and TGP Logistics;

    c. Acted and/or failed to act within the specific parameters established for him by Defendants Davis, TGP and TGP Logistics; and/or

    d. Acted and/or failed to act during the time frame during which he served the interest and/or purpose of the Defendants Davis, TGP and TGP Logistics.

69. Defendant Rogian at all times material and relevant hereto, operated a vehicle as an actual, apparent, authorized and/or ostensible agent, employee and/or servant of Defendants Davis, TGP and TGP Logistics, and was specifically dispatched by these Defendants to pick up pieces of cargo from a facility in Virginia, and deliver said cargo to a location in Green Bay, Wisconsin. This trip required him to travel in, around and through Scarbro, Fayette County, West Virginia.

70. Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, failed to comply with all applicable provisions of the FMCSR, including, but not limited to Part 391 of the FMCSR pertaining Defendant Rogian, as specifically provided for throughout this Complaint.

71. Defendants TGP and TGP Logistics at all times material and relevant hereto, failed to comply with the following subparagraphs of Part 391:

    a. Subpart C - Background and Character

        i. These Defendants never requested from Defendant Davis the application for employment completed by Defendant Rogian prior to his hiring with the company (§391.21);

    ii.  These Defendants never requested any investigation inquiries made by Defendant Davis into Defendant Rogian prior for hiring (§391.23);

    iii.  These Defendants never requested any annual inquiry and review of Defendant Rogian's driving record obtained by Defendant Davis;

  b.  Subpart D /Test

    i.  These Defendants never required Defendant Rogian to undergo a road test, nor did they ever request from Defendant Davis a copy of Defendant Rogian's road test, or the equivalent of a road test (§391.31 and 391.33);

  c.  Subpart E – Physical Qualifications

    i.  These Defendants permitted Defendant Rogian to operate a vehicle without having him provide a valid medical certificate certifying that he was physically/medically qualified to operate said vehicle and/or as required with anyone having a Class A license.

  d.  Subpart F – Files and Records

    i.  These Defendants never asked Defendant Davis Logistics for and/or reviewed the driver qualifications for Defendant Rogian (§391.51).

72.    Defendants TGP and TGP Logistics failed to determine and/or investigate the equipment Defendants Davis and Rogian would utilize in transporting large pieces of cargo to ensure said equipment was proper, appropriate and sufficient to safety load and transport the large pieces of cargo being moved from Virginia to Wisconsin.

73.    Defendants TGP and TGP Logistics failed to determine whether Defendant Rogian possessed the requisite knowledge, skill and/or education to ensure the load he was being asked to transport was properly loaded and secured

so that it would not shift, become lose, become unattached and/or cause the trailer to become unhitched/disengaged from the truck he was operating.

74.     Defendants TGP and TGP Logistics at all times material and relevant hereto, negligently, carelessly and recklessly permitted Defendants Davis and Rogian to operate a truck in direct furtherance of their specific business operation, without providing proper consideration of the specific individual(s) whom would be operating said vehicle(s), or those individual's qualifications to do so safely, legally and without incident.

75.     Defendants TGP and TGP Logistics at all times material and relevant hereto, negligently, carelessly and recklessly permitted Defendant Rogian to operate a truck and attached trailer that was not proper, appropriate and sufficient to safely, legally and without incident transport two large pieces of cargo from Virginia to Wisconsin.


76.     Defendants Davis and/or Rogian at all times material and relevant hereto, were provided a bill of lading, shipping documents and/or verbal instructions from Defendants TGP and TGP Logistics, to pick up, load and delivery of two pieces of cargo from Virginia to Wisconsin.

77.     Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, were all responsible to oversee, manage, control and direct the actions of Defendant Rogian while he was operating a truck trailer combination and transporting pieces of cargo from Virginia to Wisconsin.

78.    Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, were all responsible and required to ensure that equipment being used by Defendant Rogian to transport the two large pieces of cargo were proper, appropriate and sufficient to safely and legally do so without incident.

79.    Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, knew, or should have known, the truck trailer combination being operated by Defendant Rogian was not proper, appropriate and sufficient to safely and legally transport the two large pieces of cargo from Virginia to Wisconsin.

80.    Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, knew, or should have known, of all applicable federal, state and/or local laws prohibiting conduct making it unsafe and illegal to operate a truck and trailer combination hauling two large pieces of cargo on the public roadway.

81.    Defendant Davis, TGP and TGP Logistics at all times material and relevant hereto, knew, or should have known, of applicable federal, state and/or local laws prohibiting using certain vehicles to transport certain equipment interstate.

82.    Defendants Davis, TGP and TGP Logistics at all times material and relevant hereto, never attempted to have Defendant Rogian comply with applicable federal, state and/or local requirements during the entire time he possessed the subject truck and trailer, but especially while he operated the same on I-77 leading up to the time his trailer became unhitched and all subsequent crashes.

83.   On April 30, 2020, Defendant Rogian operated a truck trailer combination on I-77 northbound, near Milepost 63 in Scarbro, Fayette County, West Virginia, transporting/hauling pieces of cargo for, on behalf of and at the direction of Defendants Davis, TGP and TGP Logistics.

84.   Defendants TGP and TGP Logistics at all times material and relevant hereto, determined, directed, ordered, controlled and/or instructed Defendants Davis Logistics and Rogian concerning all the particulars as to picking up, loading and transporting the subject load, specifically, as to how, when, where and what was to be delivered.

85.   On April 30, 2020, Defendant Rogian while operating the truck trailer combination northbound on I-77 in Scarbro, Fayette County, West Virginia, was acting within the course and scope of his actual, contractual and/or ostensible agency and/or employment with Defendants Davis, TGP and TGP Logistics

86.   Defendant Rogian at all times material and relevant hereto was required to adhere to all logistics/plans/directions put in place and/or created by Defendants Davis, TGP and TGP Logistics.

87.   Based upon the above, Defendants Davis, TGP and TGP Logistics are all directly responsible for Defendant Rogian's actions/inactions/omissions while he possessed and operated the truck trailer combination leading up to and at the time of the subject crash.

88.   On April 30, 2020, Defendant Neitch was operating a tractor-trailer combination also on I-77 northbound and was acting for and/or on behalf of Defendants Ryder, AWF and American.

89.     Defendants Ryder, AWF and American at all times material and relevant hereto, permitted Defendant Neitch to operate said tractor-trailer.

90.     Defendants Ryder, AWF and American at all times material and relevant hereto, determined, directed, ordered, controlled and/or instructed Defendant Neitch concerning all the particulars as to operating said tractor trailer combination and/or transporting the subject load, specifically, as to how, when, where and what he was supposed to do.

91.     On April 30, 2020, Defendant Neitch while traveling on I-77 northbound in Scarbro, Fayette County, West Virginia was acting within the course and scope of his actual, contractual and/or ostensible agency and/or employment with Defendants Ryder, AWF and American.

92.     Defendant Neitch at all times material and relevant hereto was required to adhere to all logistics/plans/instructions provided to him by Defendants Ryder, AWF and American.

93.     Based upon the above particulars, Defendants Ryder, AWF and American are all directly responsible Defendant Neitch's actions/omissions/inactions when he was in possession of the subject tractor-trailer combination at the time of the crash.

94.     It is believed and therefore averred that at all times material and relevant hereto, actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority were responsible for loading, securing, attaching and providing cargo to

Defendant Rogian which eventually became unsecured, shifted and caused the trailer attached to his truck to become detached.

95.   These actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority that who were responsible for loading, securing, attaching and providing the subject cargo to Defendant Rogian were acting for and/or on behalf of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority

96.   Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority used and permitted these actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants to load, secure, attach and provide the subject cargo to Defendant Rogian, but they did so negligently, carelessly and recklessly, leading to the cardo becoming unsecured and shifting, causing the gooseneck trailer to detach from truck Defendant Rogian was operating.

97.   Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority at all times material and relevant hereto, determined, directed, ordered, controlled and/or instructed these actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants to load, secure, attach and provide the cargo to Defendant Rogian on a gooseneck trailer that was inadequate and/or insufficient to safely transport the load.

98.   These actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants responsible for loading, securing, attaching and providing a the subject cargo to Defendant Rogian were all acting within the course and scope of their actual, contractual and/or ostensible agency and/or employment with Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority.

99.   These actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants who were responsible for loading, securing, attaching and providing a the subject cargo to Defendant Rogian were required to adhere to all logistics/plans/instructions provided to them by Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority.

100.  Based upon the above particulars, Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority are all directly responsible for the actions/omissions/inactions of these actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants who were responsible for loading, securing, attaching and providing the subject cargo to Defendant Rogian which eventually became unsecured, shifted and caused his trailer to become unattached.

101.  On April 30, 2020, Plaintiff Decedent was operating a 2007 Chevrolet Malibu on I-77 northbound near Milepost 63 in Scarbro, Fayette County, West Virginia.

102.  Plaintiff Decedent at all times material and relevant hereto, was traveling into an area where Defendant Neitch's tractor-trailer had collided into Defendant Rogian's detached trailer and cargo. Defendant Neitch failed to move his colossal vehicle off the travel portion of the roadway, instead, caused it to come to a complete stop in the right hand of I-77.

103.  Plaintiff Decedent at all times material and relevant hereto, was operating her vehicle lawfully, prudently, reasonably and cautiously in the right hand lane of I-77 northbound.

104.  Defendant Rogian at all times material and relevant hereto, negligently, carelessly and recklessly drove his truck and trailer combination at an excessive, unsafe and unreasonable speed based upon the conditions that then and there existed, which included, but were not limited to, driving with an unsecured load and causing the trailer to eventually become unattached from the truck.

105.  Defendant Rogian at all times material and relevant hereto, operated a 2016 Ford F350 (dually) and pulling at a gooseneck trailer, both registered to Defendant Davis.

106.  Defendant Rogian at all times material and relevant hereto, was transporting two large pieces of industrial equipment to Green Bay, Wisconsin.

107.  These two large pieces were negligently, careless and recklessly loaded, secured, attached and provided to Defendant Rogian into/onto his gooseneck trailer by actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Terminals, Gateway, Alinda and Port Authority.

108.  Defendant Rogian at all times material and relevant hereto, failed to ensure that the two large pieces of industrial equipment he was transporting were properly loaded, properly and totally secured by straps/chains/cords and appropriate to haul with his equipment.

109.  The actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority failed to properly load, secure and/or attach the load with sufficient straps/chains/cords/equipment to safely and properly secure the two large pieces of industrial equipment, so they would not shift, move and/or cause the gooseneck trailer to become dislodged from the truck.

110.  Defendant Rogian's negligent, careless, reckless and outrageous actions/omissions not only concerning making sure the load was secure and/or could be safely transported by the equipment he was utilizing, but also the way he operated his truck trailer combination, caused the gooseneck trailer to become unattached from his truck.

111.  The actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless, reckless and outrageous actions/omissions were not only improperly insofar as loading the gooseneck trailer, but they also failed to ensure the load was secure and could be safely transported by the equipment Defendant Rogian was utilizing.

112.   The actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority breached their duty of care by not only improperly loading the gooseneck trailer, but failing to ensure the load was secure and could be safely transported by the equipment Defendant Rogian was utilizing.

113.   The actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and/or reckless loaded the gooseneck trailer, failed to ensure the load was properly secure, failed to determine the load could be transported safely by utilizing the gooseneck trailer and allowed the load to leave the facility on the equipment Defendant Rogian was utilizing that was not safe, all being the direct and proximate cause of the load shifting, moving and/or become dislodged from Defendant Rogian truck.

114.  Defendant Rogian's negligent, careless, reckless and outrageous actions/omissions caused the gooseneck trailer to become unattached from his truck and come to rest perpendicular in the travel lanes of I-77 northbound.

115.   Defendant Rogian negligently, carelessly, recklessly and outrageously failed to even notice that the gooseneck trailer became unconnected from his truck and continued to drive in a northbound direction, leaving the unattended trailer to rest perpendicular on the travel lanes of I-77 northbound.

116.   Defendant Rogian at all times material and relevant hereto, owed Plaintiff Decedent a duty to exercise due and reasonable care to maintain control of not only his vehicle, but also the attached trailer and load, so that it would not come disconnected to his truck and caused to rest perpendicular on the travel lanes of I-77 northbound.

117.   Defendant Rogian at all times material and relevant hereto, breached his duty of care to all vehicles traveling on I-77 northbound, specifically Plaintiff Decedent, when he negligently, carelessly, recklessly and outrageously failed to ensure that the load he was transporting was safely secured before driving, that the equipment he was using was sufficient to safely transport said load and permitting his trailer to become unattached from the truck so that it blocked the travel lanes of I-77 northbound.

118.   Defendant Rogian at all times material and relevant hereto, breached his duty of care to all vehicles traveling on I-77 northbound, specifically Plaintiff Decedent, when he negligently, carelessly, recklessly and outrageously failed to be aware, cognizant of the circumstances/events that were occurring with his load and attached trailer, making the conscious decision to continue driving when he knew, or should have known it was not safe to do so, and causing his trailer to become detached from his truck and come to rest perpendicular on the travel lanes of I-77 northbound, which eventually led to a collision involving a commercial motor vehicle being operated by the Defendant Neitch.

119.   Defendant Rogian's negligent, careless, reckless and outrageous actions and/or omissions were the direct and proximate cause of various crashes that day on I-77, including, the rear-end collision that Plaintiff's Decedent needlessly became involved in and causing her fatal injuries.

120.   On April 30, 2020, Defendant Neitch while operating his tractor-trailer did so at an excessive, unsafe and unreasonable speed based on the existing traffic and roadway conditions, which included, but were not limited, driving into the area at an unsafe speed where a loaded gooseneck trailer was resting perpendicular to the travel lanes of I-77 northbound.

121.   Defendant Neitch at all times material and relevant hereto operated his tractor-trailer at an excessive, unsafe and/or unreasonable speed causing it to crash into the stopped gooseneck trailer whereby his tractor-trailer proceeded northbound in the right hand lane until it stopped in the travel portion of the roadway.

122.   Defendant Neitch negligently, carelessly, recklessly and outrageously failed to get his tractor-trailer off the travel portion of the roadway after it crashed into the gooseneck trailer.

123.   Despite stopping his tractor-trailer on the travel portions of the roadway, Defendant Neitch negligently, carelessly, recklessly and outrageously failed to place any required emergency triangles, signals, flares and/or signage as required by the Federal Motor Carrier Safety Regulations, warning approaching traffic traveling northbound that his vehicle was stopped/disabled on the roadway.

124. Defendant Neitch at all times material and relevant hereto, owed Plaintiff Decedent a duty to exercise due and reasonable care to first maintain control of his tractor trailer so as not to crash into the disengaged gooseneck trailer, but to then get his vehicle off the travel portion of the roadway.

125. Defendant Neitch at all times material and relevant hereto, owed Plaintiff Decedent a duty to exercise due and reasonable care once he stopped on the travel portion of the roadway, to place emergency warning signals, triangles, flares and/or signage warning traffic traveling northbound that his tractor and trailer was stopped on the travel portion of the roadway.

126. At all times material and relevant hereto, it was raining, the roadway was wet and it was dark, making the placement of such emergency signals, signage, flares and triangles even more necessary, to warn traffic that his tractor-trailer was stopped on the travel portion of the roadway.

127. Defendant Neitch at all times material and relevant hereto, breached his duty of care to all vehicles traveling on I-77 northbound, specifically, Plaintiff Decedent when he negligently, carelessly, recklessly and outrageously crashed into the gooseneck trailer, failed to remove his tractor-trailer from the travel portion of the roadway and failed to place the required warning triangles, signals, flares and/or signage, all of which directly and proximately resulted in Plaintiff Decedent coming in contact with the rear of his trailer.

128. Defendant Neitch's negligent, careless and/or reckless driving actions and/or omissions were the direct and proximate cause of Plaintiff Decedent rear-ending his stopped trailer on the roadway and causing her fatal injuries.

129.   Defendant Neitch's negligent, careless and/or reckless driving actions and/or omissions were the direct and proximate cause of Plaintiff Decedent rear-ending his stopped trailer on the roadway and causing her fatal injuries.

130.   At all times material and relevant hereto, Plaintiff Decedent acted lawfully, carefully and prudently and in no way caused or contributed to the collision.

131.   The injuries and damages suffered by Plaintiff and Plaintiff Decedent are/were the direct and proximate result of Defendant Rogian's negligent, careless and/or reckless conduct, in the following particulars:

   a.   Failing to maintain proper control of his vehicle;

   b.   Failing to ensure that the load he was hauling was properly loaded and/or secured to the trailer;

   c.   Transporting cargo that he knew, or should have known, was too large, heavy and/or of a size that would not be safe to do so given the equipment he was utilizing;

   d.   Continuing to operate his vehicle knowing that the load he was transporting was shifting, loose and may cause the trailer to become unattached from the truck;

   e.   Failure to use sufficient straps, chains and/or equipment to ensure the load he was transporting was adequately, properly and safely secured, so that it would not shift, become loose and/or cause issues where the trailer could become disengaged from the truck;

   f.   Failure to ensure that the load was properly secured after he on I-77 after being placed on notice that it was shifting and moving, making the conscious decision to again begin driving on I-77 northbound towards Wisconsin;

   g.   Failing to keep an appropriate lookout for the load and trailer he was hauling which eventually became detached from his truck and he failed to immediately notice that event;

   h.   Continuing to operate his vehicle with the subject load when he noticed,

or in the exercise of reasonable diligence, should have determined that further operation would result in the load becoming more unsecure, loose and/or the trailer becoming unattached;

i.  operating his vehicle while he was distracted and/or inattentive;

j.  failing to maintain a sharp lookout of the attached trailer/load which eventually became detached from his vehicle and caused to come to rest on the travel portions of the roadway;

k.  Failing to use the truck's brakes to allow him to immediately stop once the load/trailer became detached, whereby he could have taken the necessary steps to warn approaching traffic that the trailer/load were resting on the travel portion of I-77 northbound;

l.  Failing to comply with West Virginia law pertaining to the operation of a vehicle in a willful and wanton disregard for the safety of persons and property;

m. Failing to comply with West Virginia law in that he operated his vehicle without due regard to the rights, safety and position of other motorists, including, but not limited to Plaintiff's Decedent;

n.  Failing to comply with West Virginia law in that he operated his vehicle combination in a reckless manner;

o.  Failing to comply with West Virginia law in that he failed to ensure that his load was properly secured and/or trailer properly attached to his truck, which ultimately detached and caused the load and trailer to come to rest on the travel portions of I-77 northbound;

p.  Operating his vehicle in transporting a load in a reckless manner;

q.  Operating a truck trailer combination while distracted and/or fatigued;

r.  Operating a truck trailer combination when failing to ensure that the load and/or trailer were properly secured/attached;

s.  Failing to adhere to all federal/state/local regulations and laws when operating a truck trailer combination in pulling a load;

t.  Failing to adhere to all Defendants, Davis, TGP and TGP Logistics' internal policies and procedures concerning the safe and lawful operation of a truck trailer combination;

u. Failing to adhere to all the Defendants, Davis, TGP and TGP Logistics' internal policies and procedures concerning the safe and lawful operation of a truck trailer combination when hauling pieces of cargo;

v. Failing to adhere to all the Defendants, Davis, TGP and TGP Logistics' internal policies and procedures concerning the safe and lawful secure of cargo before driving;

w. Violating industry standards concerning rest times, hours worked, hours driven, attentiveness, distracted driving and/or adhering to the traffic laws concerning the operation of a truck trailer while hauling pieces of cargo on highways and roadways in the State of West Virginia;

x. Failing to properly anticipate, plan and/or prepare for and/or prevent emergencies and/or equipment failure;

y. Failing to comply with industry, best practices and/or safety standards;

z. Failing to employ and/or utilize defensive driving techniques to monitor not only existing traffic and roadway conditions, but also to monitor the subject load and the trailer being used to pull the load during transport;

aa. Causing a preventable collision;

bb. Operating a truck trailer when he was physically and/or mentally unprepared and/or incapable of doing so safely;

cc. Picking up a load and/or ensuring that a load was properly secured when he was physically and/or mentally unprepared and/or incapable of doing so safely;

dd. Ensuring that the equipment he was utilizing was appropriate to transport the cargo when he was physically and/or mentally unprepared and/or incapable of doing so safely;

ee. Failing to perform an appropriate pre-trip inspection of not only his truck and trailer, but also the load that he was hauling, to ensure that it was properly secured so that it would not move or shift;

ff. Failure to employ and/or utilize training he received to become a licensed driver and/or commercial driver, specifically, as it concerns the loading of cargo and/or securement of cargo prior to attempting to transport cargo on public roadways;

gg. Failure to practice and/or understand, at minimum, safety standard concepts as outlined in the Federal Motor Carrier Safety Regulations

and all applicable commercial driver license manuals;

hh. Failure to recognize obvious hazards that should have been anticipated and/or guarded against when operating his truck trailer combination, specifically, being cognizant that the load was improperly secured and/or should not have been being hauled by the equipment he was using, which ultimately resulted in the load becoming loose and/or the trailer becoming unattached;

ii. Violating the applicable sections of the Federal Motor Carrier Safety Regulations, insomuch as those sections provide the minimum, generally accepted standards of care;

jj. Operating his truck trailer combination in violation of the laws, ordinances and regulations in the State of West Virginia, in violation of FMCSR §392.2; and

kk. Committing a serious driving violation resulting in death, in violation of West Virginia code.

132.   Defendant Rogian at all times material and relevant hereto was acting within the course and scope of his employment and/or specific relationship with Defendants Davis, TGP and TGP Logistics, as specifically outlined throughout this Complaint, consequently, Defendants Davis, TGP and TGP Logistics are vicariously liable for all injuries and damages caused by the negligent, careless and/or reckless acts of Defendant Rogian pursuant to the doctrine of respondent superior.

133.   Defendants Davis, TGP and TGP Logistics are fully liable for the acts of its respective actual, apparent, authorized and trusted and/or ostensible agents, employees, contractors, representatives, permissive operators and/or servants, including, but not limited to, Defendant Rogian, who was/were acting within the course and scope of his/their employment and/or agency relationship pursuant to the doctrine of joint venture, vicarious liability and/or actual or implied agency, or other common law or statutory theories of liability.

134.   The injuries and damages suffered by Plaintiff Decedent were also the direct and proximate result of Defendants Davis, TGP and TGP Logistics negligent, careless and reckless conduct in the following particulars:

a.  Failing to adequately monitor, control and/or supervise Rogian who was operating a truck trailer combination on behalf of these companies;

b.  Failing to adequately monitor, control and/or supervise Rogian who was operating the truck trailer combination on behalf of these companies;

c.  Permitting Rogian to operate a truck trailer combination without first undertaking adequate measures to ensure that he in fact possessed the requisite skills, ability, training, experience and/or was in fact capable of safely operating the equipment in a lawful manner, so as not to harm others driving on the roadway;

d.  Failing to ensure that Rogian complied with applicable FMCSR while operating a truck trailer combination;

e.  Permitting Rogian to operate a truck trailer combination without first undertaking adequate measures to ensure that he in fact possessed the requisite skills, ability, training, experience and/or was in fact capable of safely operating the equipment in a lawful manner, so as not to harm others driving on the roadway;

f.  Failing to inquire, investigate and/or determine whether Rogian was qualified to legally operate a truck trailer combination on the day of the collision, in direct violation of Part 391 of the FMCSR;

g.  Failing to instruct and/or train its drivers, including Rogian, in the safe, proper and prudent operation of a truck trailer to include, but not be limited to, the safety laws, rules and/or regulations provided in all applicable Commercial Drivers' Manuals, the FMCSR and/or the traffic laws of West Virginia;

h.  Failing to instruct and/or train its drivers, including Defendant Rogian, on how to properly maintain a safe speed when operating a truck trailer combination so as to avoid shifting loads and/or a trailer becoming detached from the truck;

i.  Failure to instruct and/or train its drivers, including Rogian, how to ensure that loads are properly secured so that they don't shift and cause issues with the trailer, whereby the trailer could become detached;

j.   Failure to instruct and/or train its drivers, including Defendant Rogian, how to ensure that a trailer is properly secured to a truck so that it does not become detached;

k.   Failing to instruct and/or train its drivers, including Rogian, regarding defensive driving techniques and/or the Smith Systems;

l.   Failing to instruct and/or train its drivers, including Rogian, of the importance of West Virginia Code 17-C-6-1, and to never operate a commercial motor vehicle at a speed greater than reasonable and prudent under the existing circumstances;

m.   Failure to instruct and/or train its drivers, including Defendant Rogian, regarding how to properly ensure that loads are sufficiently secured and/or a trailer is sufficiently attached to the truck so that it does not become detached, so as to avoid incidents with other vehicles utilizing the roadway;

n.   Failure to instruct and/or train its drivers, including Defendant Rogian, regarding not getting back on the roadway once they determine that a load is not sufficiently secured, until they are certain that it is safe and prudent to do so;

o.   Failing to instruct and/or train its drivers, including Rogian, regarding proper anticipation, to plan and/or prepare for, to prevent emergencies and/or prevent equipment failure, so as to avoid collisions with others utilizing the roadway;

p.   Failing to ensure its drivers, including Rogian, complied with and/or observed the FMCSR in violation of 49 C.F.R. § 390.11;

q.   Failing to ensure its drivers, including Rogian, conducted pre-trip, pre-operation, post-trip and/or post operation inspections as required by the FMCSR and the FMCSA;

r.   Failing to implement company procedures and/or policies directed towards its drivers, including Rogian, concerning safe driving principles on traveled roadways;

s.   Failing to develop policies and/or procedures directed to its drivers, including Rogian, concerning the proper, safe and lawful operation of a truck trailer to protect other drivers on the road;

t.   Failing to properly instruct, train and/or educate its drivers, including Rogian, to not operate a truck trailer combination while distracted;

u.   Permitting its drivers, including Rogian, to drive such equipment in an unsafe manner in direct violation of 49 C.F.R. §396.7;

v.  Failing to comply with 49 C.F.R. 396.3 requiring proper vehicle inspections, repairs and maintenance;

w.  Failing to comply with 49 C.F.R. 396.13 requiring proper vehicle inspections by persons permitted to operate a commercial motor vehicle owned and/or controlled by Defendant;

x.  Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

y.  Permitting Rogian to operate a truck trailer on limited sleep, while drowsy, fatigued and/or sleepy in direct violation of 49 C.F.R. Section 392.3;

z.  Failing to ensure that Rogian only drove a truck trailer within the specified number of hours he was permitted, as limited by federal and state law regulations;

aa. Failing to know and/or comply with the FMCSR, as required by 49 C.F.R. §390.3(e)(1);

bb. Failing to instruct Rogian on the requirements of the FMCSR, as required by 49 C.F.R. §390.3(e)(2);

cc. Failing to employ a competent and/or qualified safety director;

dd. Failing to adequately staff a safety department;

ee. Failing to inspect, maintain and/or repair the subject truck trailer combination to ensure that all of its parts, mechanisms and equipment were working so it could safely operate in direct violation of 49 C.F.R. Section 392.7;

ff. Failing to intervene and/or prevent Rogian from violating Federal, State and/or Local Rules, Regulations and/or Laws when it knew and/or should have known that he was unaware of and/or had the propensity to violate same;

gg. Failing to comply with all applicable state and federal laws under the circumstances as provided for under FMCSR 390.3;

hh. Failing to comply with industry best practices and/or safety standards;

ii. Violating Federal, State and Local Safety Regulations, including the FMCSR;

jj. Failing to exercise due care generally; and

kk. Failing to discharge its duty to meet minimum standards of safety for the public and persons like Plaintiff Decedent.

135.   Defendants TGP and TGP Logistics also had a duty to act reasonably in arranging transportation on public roadways, in investigating the fitness of commercial carriers they would use to transport goods, including, but not limited to, Defendant Davis, prior to contracting with and/or hiring commercial carriers to transport loads interstate, and not to contract with, hire or retain a commercial trucking company, including, but not limited to Defendant Davis, that they knew, or should have known, posed a risk of harm to others and which was otherwise not competent or fit to operate commercial motor vehicles on public roadways.

136.   Defendants TGP and TGP Logistics also had a duty to act reasonably in advising in the hiring and retaining of Defendant Davis and their drivers, including, but limited to Defendant Rogian, and to adopt and enforce policies, procedures and rules to ensure that all of the commercial carriers that it would contract and/or hire to transport loads in direct furtherance of their specific business operations, had the experience, training and knowledge to safely operate commercial motor vehicles.

137.   Defendant Davis and its drivers at all times material and relevant hereto, had a substantial history of unsafe driving violations, hours of service violations, vehicle maintenance violations, drug and alcohol violations and driver fitness violations.

138.   Based on the above, Defendant Davis was an incompetent motor carrier and hired an incompetent driver, Defendant Rogian. Such incompetency was a direct and proximate cause of this fatal collision.

139.   In addition to the above, Defendants TGP and TGP Logistics had the right to control the manner of work performed, the right to discharge, the method

of payment and/or the level of skill involved, among other things, with respect to Defendant Davis and the transportation of cargo in furtherance of the business operation of Defendants TGP and TGP Logistics.

140.  Defendants TGP and TGP Logistics, are sophisticated transportation services providers that are regularly engaged in the business of shipping and/or arranging for logistic services, knew or should have known that Defendant Davis had a substantial history of violations and was an incompetent motor carrier, and as such should have conducted further investigation and otherwise exercised due caution with respect to Defendants Davis and Rogian, which were unfit to operate safely and provide competent transportation.

141.  The injuries and damages suffered by Plaintiff Decedent were the direct and proximate result of Defendants TGP and TGP Logistics negligent, careless and/or reckless conduct, in the following particulars:

     a)     Failing to exercise due care in arranging the transportation of goods and services;

     b)     Hiring and/or retaining Defendants Davis and Rogian when they knew, should have known, or intentionally chose not to know that Defendants Davis and Rogian presented a risk of harm to others and were otherwise incompetent and unfit to perform the duties of an interstate motor carrier;

     c)     Failing to provide adequate safety and vehicle operation training to its agents, servants and/or employees in the use of its commercial motor vehicle, particularly Rogian;

     d)     Failing to provide adequate safety and vehicle operation training to its agents, servants and/or employees in the use of its motor vehicles, particularly Rogian;

     e)     Failing to monitor the Defendants Davis and Rogian in real time to make sure deliveries were done in a safe manner;

f)     Failing to discover or ascertain the inabilities, incompetence, and deficiencies of Defendant Rogian related to driving prior to entrusting him to deliver the subject load;

g)     Failing to properly control Defendant Rogian, and restrain him from operating a motor vehicle in order to prevent injury to the general public, including Plaintiff Decedent, when said Defendants knew or should have known of the high likelihood that Defendant Rogian would operate a motor vehicle in a dangerous, negligent and reckless manner;

h)     Failing to control and supervise its agent, servant and/or employees, including but not limited to Defendant Rogian in such a manner that Plaintiff Decedent would not be injured as a result of his conduct;

i)     Failing to investigate and evaluate Defendant Rogian's medical, driving, and any other relevant background as it related to his employment as a driver for Defendants, especially as it relates to the operation of a motor vehicle;

j)     Failing to develop policies and procedures concerning proper operation of a tractor-trailer combination that relate to control of said vehicle and/or adhering to laws protecting other drivers on the road;

k)     Failing to properly research the credentials of its employees, agents and/or servants to determine whether they are qualified, licensed, and/or competent to perform the services which Defendants hired them to perform;

l)     Hiring unqualified, unlicensed, and/or incompetent personnel to perform services which should only be performed by qualified professional drivers and persons;

m)     Permitting agents, employees and/or servants to perform jobs which its agents, employees and/or servants are not certified, registered, licensed, competent and/or qualified to perform;

n)     Failing to train, instruct and educate Defendant Rogian in the proper procedure and technique in the operation of a truck trailer combination;

o)     Failing to train, instruct and educate Defendant Rogian in the proper procedure and technique in the securement of loads;

p)     Failing to train, instruct and educate Defendant Rogian in all the duties and procedures required when acting as an employee, agent and/or servant of Defendant TGP and TGP Logistics;

q) Failing to enforce and/or prohibit fatigued drivers from operating a tractor-trailer combination and/or making deliveries;

r) Failing to make sure drivers are attentive and not distracted when operating a truck and trailer combination;

s) Failing to make sure that traffic laws were followed by its drivers concerning driving on roads, highways and streets;

t) Failing to adopt policies and procedures to monitor drivers and/or deliveries;

u) Failing to make sure the driver was complying with all Federal, state, and local regulations and laws;

v) Allowing, directing and/or permitting Defendant Rogian to drive and/or work on limited sleep, while drowsy, fatigued and/or sleepy;

w) Failing to ensure that its agents, servants and/or employees only drove the specified number of hours as limited by federal, state, local laws and regulations;

x) Failing to comply and know the FMCSR as required by 49 C.F.R. Section 390(e)(1);

y) Failing to instruct Rogian on the requirements of the FMCSR, as required by 49 C.F.R. Section 390.3(e)(2);

z) Failing to know and comply with FMCSR, as required by 49 C.F.R. Section 390.3(e)(1);

aa) Failing to comply with 49 C.F.R. Section 390.3(e)(2);

bb) Failing to comply with 49 C.F.R. Section 390.13;

cc) Failing to comply with 49 C.F.R. Section 392.3 which prohibits driving when alertness is impaired by fatigue, illness, and/or other causes;

dd) Failing to comply with 49 C.F.R. Section 392.6 which prohibits scheduling runs and/or permitting or requiring vehicle operation between points in such a limited period of time as to necessitate excessive and/or unreasonable speeds for existing conditions;

ee) Failing to comply with 49 C.F.R. Section 390.11 which requires motor carriers to ensure that its drivers, agents, servants and/or employees comply with and/or observe the FMCSR;

ff) Failing to comply with 49 C.F.R. Section 396.7 which prohibits unsafe vehicle operation;

gg)   Failing to comply with 49 C.F.R. Section 396.13 which requires proper vehicle inspections by the driver;

hh)   Failing to comply with Federal, state and local laws and regulations;

ii)   Failing to comply with 49 C.F.R. Section 390.13 which prohibits aiding, abetting, encouraging, and/or requiring violations of the FMCSR;

jj)   Failing to properly anticipate, plan and/or prepare for, and/or prevent emergencies and/or equipment failure;

kk)   Failing to properly train its agents, servants and/or employees to properly anticipate, plan and/or prepare for emergencies or equipment failure;

ll)   Hiring Defendant Davis;

mm)   Hiring Rogian and allowing him to drive;

nn)   Failing to properly supervise Defendant Rogian and Defendant Davis;

oo)   Failing to properly oversee and/or control Defendants Davis Rogian when Defendants TGP and TGP Logistics knew or should have known it was necessary and reasonable;

pp)   Failing to properly screen and perform background checks on their drivers and/or carriers;

qq)   Failing to employ a competent and/or qualified safety director;

rr)   Failing to adequately staff the safety department;

ss)   Failing to ensure that vehicles being used to transport goods were adequate to do so safely, properly maintained and/or cared for;

tt)   Failing to conduct or require their drivers to conduct pre-trip, pre-operation, post-trip and post operation inspections;

uu)   Failing to intervene and/or prevent and/or stop safety violations and/or violations of federal, state, or local rules, regulations and/or laws by Defendant Rogian when these Defendants knew or should have known of the same;

vv)   Failing to comply with industry best practices and/or safety standards;

ww)   Violating federal and state law;

xx)   Violating federal, state and local safety regulations, including the FMCSR;

yy)   Failing to discharge its duty to meet minimum standards of safety for the public and persons like Plaintiff Decedent;

zz)   Failing to comply with all requirements stated previously in this Complaint;

aaa)  Negligently entrusting the truck and trailer combination to all Defendants and Rogian;

bbb)  Negligently brokering and/or giving a load to Defendants Davis and Rogian;

ccc)  In hiring and/or entrusting cargo to unqualified carriers and/or persons;

ddd)  Failing to comply with industry best practices and/or safety standards; and

eee)  Failing to discharge its duty to meet minimum standards of safety for the public and persons like Plaintiff Decedent.

142.  The injuries and damages suffered by Plaintiff Decedent were also the direct and proximate result of Defendant Neitch's negligence, carelessness and/or recklessness, in the following particulars:

a)   Stopping and/or parking a commercial motor vehicle on a public roadway;

b)   Stopped a commercial motor vehicle on a highway where the safety and convenience of the traveling public was thereby endangered, in violation of WV Code § 17C-13-3;

c)   Failing to use his vehicle's warning devices in direct violation of 49 C.F.R. § 392.22;

d)   Failing to immediately turn on hazard warning signal flashers when stopping on the roadway as required by 49 C.F.R. § 392.22;

e)   Failing to keep his flashers on or have a warning device in place on the traffic side of the road within 10 minutes of stopping his tractor trailer on the roadway as required by 49 C.F.R. § 392.22;

f)   Failing to utilize three bidirectional emergency reflective triangles, red flags, fuses, liquid burning flares or any other warning device to warn other drivers that his tractor-trailer was stopped on the roadway as required by 49 C.F.R. § 392.22;

g)   Failing to place any warning devices on the traffic side of the tractor-trailer at least 40 paces from the vehicle in the center of

the road in the direction of oncoming traffic and at 40 paces in the direction away from oncoming traffic, in violation of 49 C.F.R. § 392.22;

h)   Failing to place warning devices in the direction of the curve in the roadway while stopped within 500 feet of same, as required by 49 C.F.R. § 392.22;

i)   Abandoning the tractor-trailer on the public roadway;

j)   Creating an obstruction and/or hazard that was likely to cause substantial harm to persons traveling on the roadway, including but not limited to Plaintiff Decedent.

k)   Obstructing access to the roadway from other motorists;

l)   Operating a tractor-trailer that lacked the required retro-reflective conspicuity sheeting across the entire back of the trailer as required by 49 C.F.R. § 393.13(c)(2);

m)   Failing to use due care and caution under the circumstances that then and there existed;

n)   Causing a preventable collision;

o)   Failing to employ and/or utilize the training he received to become a licensed commercial driver;

p)   Failing to comply with all applicable state and federal laws as provided under 49 C.F.R. § 390.3;

q)   Failing to practice and/or understand at a minimum, safety standard concepts as outlined in the FMCSR and the Commercial Driving License Manual;

r)   Violating the applicable sections of the FMCSR, inasmuch as those sections provide the minimum, generally accepted standards of care in the trucking industry;

s)   Failing to comply with West Virginia law pertaining to operating a vehicle in a willful and wanton disregard for the safety of persons and property;

t)   Failing to comply with West Virginia law in that he parked his tractor-trailer combination without due regard for the rights, safety and position of others on the roadway, including Plaintiff Decedent;

u)   Failing to adhere to all Federal/State/Local Regulations and Laws when operating a commercial vehicle;

v)   Failing to adhere to all Defendants Ryder, AWF and American internal policies and procedures concerning the safe and lawful operation of a tractor trailer;

w)   Violating industry standards concerning rest times, hours worked, hours driven, attentiveness, distracted driving, and/or adhering to the traffic laws concerning the operation of commercial tractor-trailer on public highways and roads;

x)   Failing to comply with industry best practices and/or safety standards;

y)   Failing to recognize obvious hazards which should have been anticipated and/or guarded against when operating a tractor-trailer; and

z)   Operating a tractor-trailer in violation of the laws, ordinances, and regulations of the State of West Virginia, in violation of 49 C.F.R. § 392.2.

143.   Defendant Neitch at all times material and relevant hereto, was acting within the scope and course of his employment and/or agency relationship with Defendants Ryder, AWF and American. Consequently, Defendants Ryder, AWF and American are vicariously liable for all injuries and damages caused by Defendant Neitch's negligent, careless and/or reckless driving actions and/or omissions leading up to and at the time of the subject collision pursuant to the doctrine of *respondeat superior* and/or vicarious liability.

144.   Defendants Ryder, AWF and American are fully liable for the acts of its respective actual, apparent, authorized, entrusted and/or ostensible agents, employees, contractors, representatives, permissive operators and/or servants, including, but not limited to Defendant Neitch, who were operating within the course and scope of their employment and/or agency relationships pursuant to the doctrine of joint venture, vicarious liability and/or actual or implied agency, or other common law or statutory theories of liability.

145. The injuries and damages suffered by Plaintiff Decedent were also the direct and proximate result of Defendants Ryder, AWF and American's own negligent, careless and/or reckless conduct in the following particulars:

a) Failing to adequately monitor, control and supervise the Defendant Neitch;

b) Permitting, allowing and/or encouraging Defendant Neitch to improperly, illegally and unreasonably park/stop the tractor-trailer on I-77 northbound;

c) Entrusting a tractor trailer to Defendant Neitch when it knew, or had reason to know of his incompetency and/or inexperience;

d) Failing to ensure that Defendant Neitch complied with all applicable FMCSR whenever he was operating/in control of a tractor-trailer on behalf of the company;

e) Entrusting its tractor-trailer to Defendant Neitch when it knew, or had reason to know that his lack of training, experience and/or driving propensities would cause him to operate said tractor-trailer in an unsafe and unlawful manner thereby creating an unreasonable risk of harm to others on the road;

f) Failing to adequately instruct and/or train its drivers, including Defendant Neitch in the safe, proper and prudent operation of a tractor-trailer to include, but not limited to, the safety laws, rules and/or regulations provided in all applicable Commercial Drivers' Manuals, the FMCSR and/or under West Virginia law;

g) Permitting Defendant Neitch to operate and/or control a tractor-trailer when it knew, or should have known, in the exercise of reasonable care, that he was not competent to do so;

h) Permitting Defendant Neitch to operate a tractor-trailer without undertaking adequate measures to ensure that he in fact possessed the requisite skills, ability, training, experience and/or was capable of operating it in a safe and lawful manner;

i) Creating, developing and/or maintaining methods of compensation that required, permitted and/or encouraged violating Federal and State Law;

j) Failing to properly instruct, train and educate its drivers, including Defendant Neitch, regarding how to appropriately stop and/or park a tractor trailer;

k)  Failing to properly instruct, train, and educate its drivers, including Defendant Neitch, regarding maintaining control of a tractor-trailer so others utilizing the roadway do not need to make evasive driving actions to avoid collision;

l)  Failing to properly instruct, train and educate its drivers, including Defendant Neitch, regarding when a commercial motor vehicle can be parked/stopped on a roadway and what steps need to be taken if stopped/parked;

m)  Failing to properly instruct, train and educate its drivers, including Defendant Neitch, regarding where tractor-trailers can be legally and safely parked/stopped;

n)  Failing to properly understand where Defendant Neitch was parking and/or stopping his vehicle while they allowed him to be in possession of same;

o)  Failing to exercise due care generally;

p)  Failing to implement company procedures and/or policies directed towards its drivers concerning safe driving principles whenever it is absolutely necessary to stop on a highway and/or to avoid stopping on the highway where other vehicles are traveling;

q)  Failing to properly instruct, train and educate its drivers, including Defendant Neitch, regarding how to properly warn traffic of a stopped commercial motor vehicle on the highway;

r)  Failed to properly instruct, train and educate its drivers, including Defendant Neitch on when it is permitted to stop on a roadway;

s)  Failed to properly instruct, train and educate its drivers, including Defendant Neitch, regarding how to pull their tractor-trailers to the side of the road/berm/shoulder/clear space if it is necessary to stop;

t)  Failed to properly instruct, train and educate its drivers, including Defendant Neitch, to never abandon a tractor-trailer on the roadway without putting up warning devices as required by the FMCSR;

u)  Failing to ensure those permitted to operate its commercial equipment, including Defendant Neitch, complied with and/or observed the FMCSR, in violation of 49 C.F.R. § 390.11;

v)  Failing to comply with 49 C.F.R. § 390.13 which prohibits aiding, abetting, encouraging and/or requiring violations of the FMCSR by persons permitted to operate commercial motor vehicle owned/controlled by Defendants Ryder, AWF and American;

w) Failing to ensure its drivers, including Defendant Neitch, conducted pre-trip, pre-operation, post-trip and/or post-operation inspections, as required by the FMCSR;

x) Failing to properly vet Defendant Neitch;

y) Failing to intervene and/or prevent Defendant Neitch from violating Federal, State and/or Local Rules, Regulations and/or Laws when it knew and/or should have known that he was unaware of and/or had the propensity to violate same;

z) Failing to comply with industry best practices and/or safety standards;

aa) Violating federal, state and local safety regulations, including the FMCSR and West Virginia Motor Vehicle Code;

bb) Failing to comply with all applicable state and federal laws under the circumstances as provided under 49 C.F.R. § 390.3;

cc) Failing to discharge its duty to meet minimum standards of safety for the general public and persons like Plaintiff Decedent; and

dd) Failing to exercise due care generally.

146.    The injuries and damages suffered by Plaintiff Decedent were the direct and proximate result of the negligent, careless and reckless conduct of the actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants who were responsible for loading, securing, attaching and providing a the subject cargo to Defendant Rogian trailer and acting on behalf of and/or at the direction of Defendants Portsmouth, Terminals, Gateway, Alinda and Port Authority, in the following particulars;

a. Actually placing the pieces of large cargo on the gooseneck trailer when they knew, or should have known, the cargo was too big, large and/or heavy to be transported by said equipment;

b. Permitting Defendant Rogian to leave the facility/terminal with the large, oversized and heavy cargo that was loaded onto a gooseneck trailer that was not sufficient, appropriate or able to transport the cargo safely and without incident;

c. Failing to ensure that the load Defendant Rogian was hauling was

properly loaded and/or secured to the gooseneck trailer;

d. Improperly loading and/or securing the two large pieces of cargo to the gooseneck trailer;

e. Not understanding, realizing and/or caring that the gooseneck trailer was of a size not sufficient to safely transport the load to loaded and improperly secured to his gooseneck trailer;

f. Not understanding, realizing and/or caring about the manufacturing specifications of the amount of weight the subject gooseneck trailer could safely carry/pull when the cargo was loaded onto the gooseneck trailer being pulled by Defendant Rogian;

g. Allowing cargo to be loaded onto the gooseneck trailer they knew, or should have known, was too large, heavy and/or of a size that would not be safe to do so;

h. Failure to use sufficient straps, chains and/or equipment to ensure the cargo loaded onto the gooseneck trailer was adequately, properly and safely secured, so that it would not shift, become loose and/or cause issues where the trailer could become disengaged from the truck;

i. Failure to ensure that the load was properly secured before allowing Defendant Rogian to leave the facility/terminal;

j. Failing to comply with federal, state and local laws pertaining to safely and sufficiently loading and securing cargo onto the gooseneck trailer which was done in a willful and wanton disregard for the safety of persons and property traveling on the highways where that cargo would be transported;

k. Failing to comply with federal, state and local laws in that the load should not have been done given the equipment it would be hauled and/or improperly securing the cargo onto Defendant Rogian's trailer in a reckless manner;

l. Failing to comply with federal, state and local laws in that they failed to ensure that his load was properly secured and/or strapped before Defendant Rogian left the facility;

m. Loading and securing a load in a reckless manner;

n. Loading and/or securing a load while distracted and/or fatigued;

o. Failing to ensure that the load was properly secured/attached before

allowing Defendant Rogian to leave the facility;

p. Failing to adhere to all federal/state/local regulations and laws when loading and securing the gooseneck trailer;

q. Violating industry standards concerning loading and securing large cargo onto a trailer;

r. Failing to properly anticipate, plan and/or prepare for and/or prevent emergencies;

s. Failing to comply with industry, best practices and/or safety standards;

t. Causing a load to become lose and/or unsecured;

u. Failing to ensure that the equipment Defendant Rogian was utilizing was appropriate to transport the cargo safely and without incident;

v. Failing to perform an appropriate inspection to ensure that the load was properly secured so that it would not move or shift;

w. Failure to employ and/or utilize training received as it concerns the loading of cargo and/or securement of cargo prior;

x. Failure to recognize obvious hazards that should have been anticipated and/or guarded against when loading and/or securing the load on the gooseneck trailer that that was improperly secured and/or should not have been being hauled by the equipment Defendant Rogian was using, which ultimately resulted in the load becoming loose and/or the trailer becoming unattached; and

y. Violating the applicable sections of the Federal, State and Local laws and regulations, insomuch as those provide the minimum, generally accepted standards of care;

147. These actual, apparent, entrusted, authorized and/or ostensible agents, employees, contractors and/or servants who were responsible for loading, securing, attaching and providing a the subject cargo to Defendant Rogian, were all acting within the course and scope of their employment and/or specific relationship with Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal,

Gateway, Alinda, Universities and Port Authority, as specifically outlined throughout this Complaint, consequently, Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority are vicariously liable for all injuries and damages caused by the negligent, careless and/or reckless acts of these individuals pursuant to the doctrine of respondent superior.

148. Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority are fully liable for the acts of its respective actual, apparent, authorized and trusted and/or ostensible agents, employees, contractors, representatives, permissive operators and/or servants, who was/were acting within the course and scope of their employment and/or agency relationship pursuant to the doctrine of joint venture, vicarious liability and/or actual or implied agency, or other common law or statutory theories of liability.

149. The injuries and damages suffered by Plaintiff Decedent were also the direct and proximate result of Defendants Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and reckless conduct in the following particulars:

   a. Failing to adequately monitor, control and/or supervise those individuals who were responsible for loading and/or securing the subject load to Defendant Rogian's trailer;

   b. Failing to adequately monitor, control and/or supervise the individuals who were loading, securing, attaching and/or placing the cargo onto Defendant Rogian's trailer;

   c. Permitting thee individuals to load, secure, attached and/or place the cargo onto Defendant Rogian's trailer without first undertaking

adequate measures to ensure these individuals in fact possessed the requisite skills, ability, training, experience and/or was in fact capable of safely do so in a lawful manner, so as not to harm others driving on the roadway;

d.  Failing to ensure that these individuals complied with applicable regulations and laws when loading, securing, attaching and/or placing the subject cargo on Defendant Rogian's trailer;

e.  Failing to instruct and/or train these individuals, in the safe, proper and prudent was to load, secure, attach and/or provide a load in compliance with the safety laws, rules and/or regulations;

f.  Failing to instruct and/or train these individuals how to properly load, secure, attach and provide a load so as to avoid shifting loads and/or a trailer becoming detached from the truck;

g.  Failure to instruct and/or train these individuals how to ensure that loads are properly secured so that they don't shift and cause issues with the trailer, whereby the trailer could become detached;

h.  Failure to instruct and/or train these individuals how to ensure that a load and trailer are properly secured so the load or trailer do not become detached;

i.  Failure to instruct and/or train these individuals regarding how to properly ensure that loads are sufficiently secured and/or a trailer is sufficiently attached to the truck so that it does not become detached, so as to avoid incidents with other vehicles utilizing the roadway;

j.  Failing to employ competent and/or qualified persons to load trailer;

k.  Failing to adequately staff a safety department;

l.  Failing to intervene and/or prevent these individuals from violating Federal, State and/or Local Rules, Regulations and/or Laws when it knew and/or should have known that these individuals were unaware of and/or had the propensity to violate same when loading materials onto trailers;

m. Failing to comply with industry best practices and/or safety standards;

n.  Violating Federal, State and Local Safety Regulations;

o.  Failing to exercise due care generally; and

p. Failing to discharge its duty to meet minimum standards of safety for the public and persons like Plaintiff Decedent.

150.   Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority each owed a duty to Plaintiff Decedent to use reasonable care for her safety in all the particulars as set forth throughout this Complaint.

151.   Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority as described throughout this Complaint, exhibited a conscious disregard for the rights and safety of Plaintiff Decedent, and other individuals who were operating vehicles at and/or near the crash location, as their stated conduct had a great probability of causing substantial harm.

152.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and reckless conduct as described herein, Plaintiff Decedent suffered catastrophic and fatal injuries.

153.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and reckless conduct as described herein, Plaintiff Decedent was conscious, alert and experienced severe physical pain, mental pain, shock, terror, agony, suffering and emotional distress before dying as a result of her catastrophic injuries.

154.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and/or reckless conduct, as described herein, Anthony Laufert (father) Kandi Laufert (mother) and Kyle Laufert (brother) (hereinafter collectively referred to as "Plaintiff Decedent's family"), have suffered damages as a result of the premature death of Plaintiff Decedent.

155.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and/or reckless conduct as described herein, Plaintiff Decedent's family has suffered a loss of the reasonable expected income, services, protection, care and assistance which Plaintiff Decedent would have earned and provided during her lifetime, and each will continue to suffer such loss on a permanent basis into the future.

156.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and/or reckless conduct as described herein, Plaintiff Decedent's family has suffered sorrow and mental anguish, including a loss of solace, society, companionship, comfort, guidance and advice that Plaintiff Decedent would have provided during her lifetime, and each will continue to suffer such loss on a permanent basis into the future.

157.   As a direct, proximate and reasonably foreseeable result of Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority negligent, careless and/or reckless conduct as described herein, Plaintiff Decedent's family has incurred funeral expenses, as well as other expenses related to the collision.

158.   The Defendants Davis, Rogian, Ryder, AWF, American, Neitch, TGP, TGP Logistics, Portsmouth, Norfolk, Newport, Inland, Richmond, Terminal, Gateway, Alinda, Universities and Port Authority, reckless and outrageous conduct as described herein, blatantly disregarded the rights of Plaintiff Decedent, and as such, the Plaintiff is entitled to recover punitive damages from the Defendants in order to deter them and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff, Kandi Laufert, Individually and as the Personal Representative of the Estate of Nichole Ashley Laufert, Deceased, respectfully prays that judgment be entered against Defendants, Davis Logistics, LLC, Stephan Rogian, Ryder Truck Rental, Inc., AWF Express, LLC, American Wood Fibers, Inc., Martin Neitch, Trans Global Projects Group, TGP Logistics, Portsmouth Marine Terminal, Norfolk International Terminals, Newport News Marine Terminals, Virginia Inland Port, Richmond Marine Terminals, Virginia International Terminals, LLC, Virginia International Gateway, Alinda Capital Partners, Universities Superannuation Scheme Ltd.  and Virginia Port Authority, jointly and severally, for compensatory damages, as well as punitive damages, for all damages contemplated to compensate statutory beneficiaries pursuant to the West Virginia Wrongful Death

Statute, and to be awarded to the Estate for the underlying Survival Action/Claims, and for prejudgment and post-judgement interest, attorney fees and costs expended in this action, any other specific or general relief as may become apparent as this matter progresses, and such other relief as this Court Deems proper.

### <u>A JURY TRIAL IS DEMANDED ON ALL ISSUES</u>

KANDI LAUFERT, Individually
And as Personal Representative
For the ESTATE OF NICHOLE
ASHLEY LAUFERT, DECEASED,


<u>*/s/ Christopher J. McCabe, Esq.*</u>
JAMES G. BORDAS, III (#8518)
CHRISTOPHER J. McCABE, ESQ. (#13652)
1358 National Road
Wheeling, WV 26003
(T) 304-242-8410
(F) 304-242-3936
(E) JBordasiii@bordaslaw.com
    CMcCabe@bordaslaw.com


<u>*/s/ Brooks West, Esq.*</u>
BROOKS WEST, ESQ. (#10493)
DAVID A. DOBSON, ESQ. (#12092)
West Law Firm, L.C.
1514 Kanawha Blvd. East, Suite 2
Charleston, WV  25311
(T)  304-343-9378
(F)  304-343-5535
(E) brooks@wvpersonalinjurylawyer.com
    david@wvpersonalinjurylawyer.com